

EOD
07/27/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **BART AREK SCHNELL** § | | |
| xxx-xx-2968 § | Case No. 14-41478 | |
| **and STEPHANIE MARIE SCHNELL** § | | |
| xxx-xx-6365 § | | |
| § | | |
| Debtors § | Chapter 7 | |
| FUTURE WORLD § | | |
| ELECTRONICS, LLC § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | Adversary No. 14-4081 | |
| § | | |
| BART AREK SCHNELL § | | |
| § | | |
| Defendant § | | |

**MEMORANDUM OF DECISION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]**

ON THIS DATE the Court considered the Motion for Summary Judgment filed by the Plaintiff, Future World Electronics, L.L.C. ("Plaintiff"), in the above-referenced adversary proceeding. The Plaintiff's adversary complaint seeks a determination that the debt owed to it by the Defendant-Debtor, Bart Arek Schnell (the "Defendant"), is excepted from the scope of his Chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(6), which excepts from discharge a debt "for willful and malicious injury by the debtor to

---

[1] This Memorandum is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

another entity or to the property of another entity." According to the Plaintiff, the determinations issued by the United States District Court for the Northern District of Texas that resulted in the entry of a judgment against the Defendant and his affiliated company for willful copyright infringement, establish the elements necessary to render that judgment debt nondischargeable as a matter of law under § 523(a)(6). Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court finds that the Plaintiff has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law that the debt owed to it by the Defendant is nondischargeable under § 523(a)(6).[2]

## Factual and Procedural Background[3]

The Plaintiff, Future World Electronics, L.L.C., is a Louisiana limited liability company that creates advertising materials for use in the automotive direct marketing industry. As a result of its enterprise, it has created several successful direct-mail advertising pieces, some of which have become protected copyrighted materials. On July 3, 2012, Plaintiff brought suit for copyright infringement and other causes against the

---

[2] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] The facts presented are those which stand uncontested by and among the parties and are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

Defendant, Bart A. Schnell, and his solely-managed Texas limited liability company, Over Drive Marketing, L.L.C. ("Over Drive"), and other parties, in the United States District Court for the Northern District of Texas, Dallas Division, the Hon. Jane J. Boyle, presiding (the "District Court"), under cause no. 3:12-cv-2124. The Plaintiff's suit against the Defendant in Dallas sought to impose personal liability upon the Defendant for his personal actions taken through the auspices of Over Drive to infringe upon the Plaintiff's copyright protections, thereby subjecting him and his company to various legal remedies outlined in 17 U.S.C. §501 *et. seq.*, including the assessment of actual and/or statutory damages[4] and liability for costs and attorneys' fees.[5]

After the District Court granted four separate requests for extension of time to answer by the Defendant and Over Drive, they filed an answer on September 15, 2012.[6] In April 2013, the Defendant's counsel withdrew because the Defendant ceased communicating with him.[7] The District Court subsequently entered default against Over Drive for its failure to obtain counsel for a corporate entity. On November 5, 2013, in the context of granting a default judgment and permanent injunctive relief against Over Drive,[8] the District Court found that the Plaintiff's request for the assessment of statutory

---

[4] 17 U.S.C. § 504.

[5] 17 U.S.C. § 505.

[6] Plaintiff's Ex. A-2 at 2.

[7] *Id.*

[8] Plaintiff's Ex. A-3.

damages against the Defendant and Over Drive required an actual hearing on the damages claims and it ordered all parties to attend such a hearing to be conducted on November 22, 2013.[9]

Despite the Court's order, neither the Defendant nor Over Drive appeared at the November 22 hearing.[10] At and after the November 22 hearing, the Plaintiff tendered various pieces of evidence in support of its requests for statutory damages and an assessment of attorneys' fees and costs.[11] On December 3, 2013, the District Court entered a final judgment against Over Drive for its repeated willful infringement of the Plaintiff's copyrighted materials which awarded the Plaintiff $82,500 in statutory damages pursuant to 11 U.S.C. §504(c)(2) and $70,980.60 in attorneys' fees and costs pursuant to 11 U.S.C. §505 based upon a lodestar analysis.[12] It declined to award pre-judgment interest, but awarded post-judgment interest based upon the stated federal rate.

Because the individual Defendant ignored its directive to attend the November 22 damages hearing, the District Court issued an order on that date, directing the Defendant to show cause by December 6, 2013 why he failed to comply with the Court's order and warning the Defendant that any further failure to comply would result in the granting of a

---

[9] *Id.* at 7-9.

[10] Plaintiff's Ex. A-2 at 3.

[11] Plaintiff's Ex. A-1 at 1.

[12] *Id.* at 2.

default judgment against him.[13] The Defendant also ignored this show cause order. The District Court subsequently found that the Defendant had failed to participate in the case since the withdrawal of his counsel in April 2013, including his failure to respond to the Plaintiff's Motion for Partial Summary Judgment against him and his repeated failures to abide by the Court's orders to appear.[14] The District Court further found that there was no evidence that the Defendant's noncompliance was due to a good faith mistake or excusable neglect[15] and that it was more properly characterized as "outright defiance."[16] Nevertheless, the District Court examined whether, despite such defiance, the Defendant should be held personally liable for the willful copyright infringement. The District Court found, on the basis of the evidence submitted, including the Defendant's own concessions, that the individual Defendant was the "sole member, manager, president, and director of Over Drive" and that the Defendant "knew of and controlled" his company's "creation, copying, distribution, and use of the Infringing Work."[17] It further found that the individual Defendant "had the authority and influence within the corporation to expose himself to liability for Over Drive's act of infringement."[18] Thus, the District

---

[13] Plaintiff's Ex. A-2 at 1.

[14] *Id.* at 4-5.

[15] *Id.* at 5.

[16] *Id.* at 5-6.

[17] *Id.* at 6.

[18] *Id.*

Court, in a final judgment entered against the Defendant on December 9, 2013, held the individual Defendant jointly and severally liable for the $82,500 in statutory damages and the $70,980.60 in attorneys' fees and costs, plus accrued interest, as a joint tortfeasor responsible for the willful copyright infringement (the "Federal Court Judgment").[19] No appeal of the Federal Court Judgment was prosecuted.

Seven months later, on July 10, 2014, Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. The underlying bankruptcy case was assigned to the Honorable Brenda T. Rhoades. Three months later, on October 7, 2014, Plaintiff filed its adversary complaint to determine the nondischargeability of the debt memorialized by the Federal Court Judgment (hereafter "Plaintiff's Complaint"). On or about May 7, 2015, Plaintiff filed the motion for summary judgment under present consideration (hereafter "Plaintiff's Motion"), seeking a determination that the Federal Court Judgment should be declared nondischargeable under § 523(a)(6) as a "willful and malicious injury."[20] Relying on principles of issue preclusion, Plaintiff alleges therein that the factual issues underlying its cause of action for nondischargeability were actually litigated in the federal district court in Dallas and that, in light of the entry of the Federal Court Judgment, this Court is precluded from deciding those issues again. The Defendant has filed a response in opposition to the Plaintiff's Motion and the Plaintiff has presented a reply to that response.

---

[19] *Id.* at 7.

[20] Dkt # 14.

## Discussion

*Summary Judgment Standard*

The Plaintiff brings its Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[21] "The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Chishty v. Texas Dept. of Aging and Disability Services,* 562 F. Supp. 2d 790, 800 (E.D. Tex. 2006).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible

---

[21] Pursuant to the scheduling order issued in this adversary proceeding on December 16, 2013, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions are decided under the procedures stated therein.

evidence to support the fact.

FED. R. CIV. P. 56(c).

The manner in which the required summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion rests on the moving party, "that party must support its motion with credible evidence – using any of the materials specified in Rule 56(c)– that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331. Upon a *prima facie* showing by the movant of entitlement to judgment as a matter of law, the non-movant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). "A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless. The substantive law will identify which facts are material.

The summary judgment record is viewed in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), "but only where there is an actual controversy, that is, when both parties have

submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (emphasis added). The Court will not weigh the evidence nor evaluate its credibility; however, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a non-movant fails to present specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001). Indeed, "summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *accord*, *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

In this case, the Plaintiff bears the ultimate burden as to the nondischargeability of the debt. Therefore, the Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under the nondischargeability theory that is pled. The Plaintiff asserts that the principles of issue preclusion (collateral estoppel) resulting from the entry of the Federal Court Judgment provide the factual foundation necessary to support a finding of nondischargeability. In order to properly assess this claim, the Court must first determine the applicability of the doctrine itself. If

collateral estoppel applies, then any appropriate factual findings of the presiding federal court should not be disturbed here, and the Court will apply those findings to the nondischargeability elements. To the extent that an actual controversy does exist over a disputed fact, the finder of fact resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *U.S. ex rel. Longhi v. United States,* 575 F.3d 458, 465 (5th Cir. 2009).

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994), *quoting Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also* RESTATEMENT (SECOND) OF JUDGMENTS §27 (1982) ["When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."]. "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of §523(a)(6)." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks and alterations omitted). The bankruptcy court retains exclusive jurisdiction, however, to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284, n.11 (1991); *Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253,

1255 (5th Cir. 1984).

Because the judgment against the Debtor arose from a federal court, federal principles of issue preclusion control. *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995). Accordingly, the application of issue preclusion in this case rests upon three factors[22]: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 932 (5th Cir.), *cert denied,* 527 U.S. 1004 (1999) (*citing Pentecost*, 44 F.3d at 1290).

In consideration of the *Southmark* elements, both parties to this action were involved in the federal court litigation and aligned similarly. It is further clear that the determination of whether the Defendant should be held jointly and severally liable for the willful copyright infringement was necessary to the entry of the Federal Court Judgment against the Defendant. The Defendant contends that because the District Court's findings arose from a default judgment hearing which was properly noticed to the Defendant and at which the Defendant voluntarily elected to absent himself, it cannot be considered to

---

[22] Though considered extraneous in most circumstances, a fourth requirement that there be "no special circumstance that would render preclusion inappropriate or unfair" is sometimes listed, *see, e.g., id; U.S. v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), particularly in cases involving offensive collateral estoppel. But since this case involves traditional (or mutual) issue preclusion and no party has alleged the existence of any such special circumstance, this fourth requirement is deemed inapplicable to the case at hand.

have been "fully and fairly litigated."

That is clearly incorrect. "A sanctioned post-answer default judgment is considered a final judgment on the merits for collateral estoppel purposes even when the defendant's pleadings are struck." *Guion v. Sims (In re Sims)*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012), citing *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996) for the proposition that "the judgment was final because debtor was aware of the creditor's motion for sanctions and of the possibility that the court would strike his pleadings in rendering a default judgment." *Id.* [with both applying Texas issue preclusion principles]. One year after *Gober*, in *Pancake v. Reliance Ins. Co. (In re Pancake),* 106 F.3d 1242 (5th Cir.1997), the Fifth Circuit again approved the use of collateral estoppel in a bankruptcy dischargeability action arising from a case in which the Texas state court, after striking the answer of the defendant for discovery abuses, entered judgment for $455,703.31 at a trial at which the defendant failed to appear. Under those circumstances, the Circuit stated that, notwithstanding the defendant's absence, "where the court enters a default judgment after conducting a hearing or trial at which the plaintiff meets [its] evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel purposes." *Id.* at 1244. Though the decisions in *Pancake* and *Gober* involved the application of Texas law on issue preclusion as opposed to federal law, the point as to when an issue is "actually litigated" is the same. *Cornwell v. Loesch (In re Cornwell)*, 109 Fed. App'x. 682, 684 (5th Cir. 2004) [applying same analysis under federal court preclusion principles]. Thus, the

unilateral election of the Defendant to forego any appearance at the federal district court's November 22, 2013 evidentiary hearing which was properly noticed to him, or its subsequent use of that evidentiary process in determining the liability of the individual defendant, has no impact upon the preclusive effect of facts arising therefrom.

The record sufficiently demonstrates that the federal district court in Dallas actually conducted an evidentiary hearing on Plaintiff's claims against both the Defendant and his solely-owned company where it admitted evidence, heard argument, and made factual findings. The Defendant was provided a full and fair opportunity to litigate any contested issue at that hearing, but he elected not to attend despite proper notice and the Court's directive to appear. Even then, the District Court elected to enter what ostensibly was an interim judgment against the company in order to give the individual Defendant yet another chance to appear and refute the evidence that had been tendered at the damages hearing prior to the entry of a final judgment against him. The Defendant chose to continue his "defiance" and declined to do so. The District Court subsequently determined that the Plaintiff had met its burden of proof, thus resulting in the entry of the Federal Court Judgment against the Defendant. Under the applicable authorities, that is sufficient to meet the requirement that an issue be "actually litigated" before it can be given binding effect. Thus, the Defendant's contention that the results of the hearing cannot be binding upon him (and this Court) in this adversary proceeding must be rejected.

The remaining defense offered by the Defendant is that, even if the factual findings

-13-

of the District Court are binding upon him under issue preclusion principles, such established facts are insufficient to prove a "willful and malicious injury" under §523(a)(6). The Defendant contends that "willfulness" in the context of a willful copyright infringement is not the equivalent of the degree of willfulness required under §523(a)(6).

While it is possible for an individual to be held personally liable for willful copyright infringement when one recklessly disregards the possibility that his conduct might constitute infringement, *Philip Morris USA Inc. v. Lee*, 547 F.Supp.2d 685, 693 (W.D. Tex. 2008) and cases cited therein, the evidence presented to, and the conclusions made by, the District Court reveal that the determination made by the District Court to assess individual liability against the Defendant for the damages owed to the Plaintiff was based upon the deliberate action of the Defendant. As the only person controlling the actions of the company, the District Court determined that the Defendant "knew of and controlled" his company's illegal actions when it engaged in willful copyright infringement in violation of the Plaintiff's rights. This is not a "failure to supervise" case. There is not a single reference to reckless conduct in any of the orders and/or judgments issued by the District Court. The Federal Court Judgment against the Defendant clearly arises from his own willful participation — in directing his solely-owned company to violate repeatedly the copyright rights of the Plaintiff. As recognized in copyright

infringement jurisprudence,[23] this degree of participation and cognitive assent to the deliberate infliction of the harmful conduct is buttressed by the consistent refusal of the individual Defendant to resolve the dispute prior to litigation, despite efforts by the Plaintiff in this case to do so, and by his failure to engage in an active defense of his allegedly reckless conduct, despite numerous District Court directives. Contrary to the argument of the Defendant, there is no summary judgment evidence that the District Court utilized any type of recklessness standard in imposing joint and several liability upon the Defendant for the damages arising from the willful copyright infringement which he clearly directed.

*§523(a)(6)*

Of course, it remains the duty of this Court to determine whether the factual findings issued in the Federal Court Judgment are sufficient to meet the elements of nondischargeability under §523(a)(6).[24] In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court stated that:

> the word "willful" in (a)(6) modifies the word "injury,"
> indicating that nondischargeability takes a deliberate or
> intentional injury, not merely a deliberate or intentional act
> that leads to injury. Had Congress meant to exempt debts

---

[23] See jurisprudence referenced in Plaintiff's Ex. A-3 at note 4.

[24] Section 523(a)(6) of the Bankruptcy Code provides as follows:

> (a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt ...
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

> resulting from unintentionally inflicted injuries, it might have
> described instead "willful acts that cause injury." Or,
> Congress might have selected an additional word or words,
> i.e., "reckless" or "negligent," to modify "injury." Moreover,
> . . . the (a)(6) formulation triggers in the lawyer's mind the
> category "intentional torts," as distinguished from negligent
> or reckless torts. Intentional torts generally require that the
> actor intend "the consequences of an act," not simply "the act
> itself." RESTATEMENT (SECOND) OF TORTS §8A, comment *a*,
> p. 15 (1964).

*Geiger* at 61. The Supreme Court concluded that negligent or reckless acts are not sufficient to establish that a resulting injury is "willful and malicious" and that, therefore, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of §523(a)(6)." *Id.* at 64.

In *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit analyzed the *Geiger* ruling in an effort to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury. The *Miller* court determined that a "willful . . . injury" is established under §523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action or (2) there is a subjective motive to cause harm by the party taking a deliberate or intentional action. It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under §523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that

malice element. *Id.* at 604-06.

The "objective substantial certainty" prong is a recognition of the evidentiary reality that defendants in a bankruptcy context rarely admit an intent to cause harm. "A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re Vollbracht*, 276 Fed. App'x. 360 (5th Cir. 2007).[25]

"An act of willful [copyright] infringement necessar[ily] (sic) qualifies as an act committed with the intent to cause injury: since copyright infringement is a categorically harmful activity, harm is certain to follow from a willful act of infringement." *Am. Registry of Radiologic Technologists v. Bennett*, 2013 WL 4520533, at *15 (W.D. Tex., Aug. 26, 2013) (internal quotations omitted) (citing *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 451 (N.D. Cal. 2005)). As with other statutory violation cases in which statutory damages are authorized because the infliction of financial harm is difficult to prove or to quantify accurately, including cases of intentional trademark

---

[25] "Injuries covered by §523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by §523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

infringement,[26] cybersquatting,[27] violations of the Telephone Consumer Protection Act,[28] and violations of the Federal Communications Act,[29] a debtor who engages in willful copyright infringement necessarily commits a §523(a)(6) violation because "it is impossible to separate the conduct . . . from the injury when considering the defendant's intent. . . . [It] is a categorically harmful activity." *Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 WL 7809005, at *9-10 (B.A.P. 9th Cir., Dec. 17, 2009) (internal quotation marks omitted) [trademark infringement case]. Willfully engaging in the conduct proscribed by the statute is the equivalent of willfully intending to inflict damage or harm to the recipient as declared by the United States Congress in providing for statutory damages in response to such conduct. Such statutorily-proscribed conduct thereby creates, under the *Miller* standard, an objective substantial certainty of harm arising from that deliberate action by this Defendant. As a result, "intentional infringement of a copyright . . . is tantamount to intentional injury under bankruptcy law . . . [because] a debtor who intentionally infringes a copyright is charged with the knowledge that injury to the copyright holder is sure, or substantially certain, to result."

---

[26] *Symantec Corp. v. Mann (In re Mann)*, 410 B.R. 43 (Bankr. C.D. Cal. 2009).

[27] *Nguyen v. Biondo (In re Biondo)*, 2014 WL 2702891, at *7 (Bankr. S.D. Fla., June 13, 2014).

[28] *Baltimore–Washington Telephone Co. v. Horne (In re Horne),* Adv. No. 10–4328 (Bankr. E.D. Tex., filed Apr. 11, 2012) (unpublished).

[29] *DirecTV, Inc. v. Karpinsky (In re Karpinsky)*, 328 B.R. 516 (Bankr. E.D. Mich. 2005).

*Symantec Corp. v. Cristina (In re Cristina)*, 2011 WL 766966, at *4 (Bankr. S.D. Fla., Feb. 24, 2011). "Further, any liability duly imposed as a direct, but-for result of the defendant's nondischargeable conduct constitutes a nondischargeable debt, regardless of whether the liability reflects the actual damages incurred by the plaintiff." *Smith*, 2009 WL 7809005, at *11, *citing Cohen v. de la Cruz,* 523 U.S. 213, 220 (1998) [affirming as nondischargeable statutory treble damages]. Thus, the conclusions reached by the United States District Court for the Northern District of Texas that resulted in the entry of the Federal Court Judgment against the Defendant for statutory damages and attorneys' fees and costs arising from a willful copyright infringment, establish, as a matter of law, a "willful and malicious injury" under the *Geiger* and *Miller* standards so as to render the Federal Court Judgment against the Defendant nondischargeable under §523(a)(6).

## Conclusion

For the reasons stated above, the Court concludes that the Plaintiff, Future World Electronics, L.L.C., is entitled to a summary judgment that the debt owing to it by the Debtor-Defendant, Bart Arek Schnell, arising from the Federal Court Judgment issued by the United States District Court for the Northern District of Texas is nondischargeable under the provisions of 11 U.S.C. §523(a)(6). The Court also concludes that court costs of $350.00 incurred in this adversary proceeding should be assessed against the Debtor-

Defendant in favor of the Plaintiff. An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 07/27/2015

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

NOT FOR PUBLICATION